**In the Matter of ENDICOTT COMPANY,**
**Bankrupt.**
**No. 26926.**

United States District Court
E. D. Pennsylvania.
March 31, 1964.

Jack B. Justice, Drinker, Biddle & Reath, Philadelphia, Pa., for Girard Trust Corn Exchange Bank.

Gold, Bowman & Korman, Philadelphia, Pa., substituted counsel for R. Paul Endicott and others.

KIRKPATRICK, District Judge.

The Referee ordered that the claims of John F. and R. Paul Endicott against the bankrupt Endicott Company be subordinated to the claim of Girard Trust Corn Exchange Bank. The question raised by

this certificate for review is whether any valid contract providing for such subordination was ever entered into.

The Referee's fact findings have been carefully reviewed and I find no reason to disturb any of them. They establish the following:

On or about January 30, 1947, a printed form entitled "Subordination Agreement" was signed by the Endicotts [1], the owners of the bankrupt corporation, and left with the bank. The form was carelessly filled out, but it is perfectly clear that it was intended to bind the three Endicotts as individuals. At the end of the form the bank's name is printed, but it was not signed by anyone for the bank.

By the terms of the agreement, the bank, in consideration of the promise of the Endicotts to subordinate their claims, agreed "to consider the applications of Borrower (Endicott Company) for credit." This does not appear to be very much of an obligation, but the intent is plain enough, namely, that, if the bank advances any money to the corporation, the Endicotts' claims against it will be subordinated to the bank's.

Thereafter, up to the time of the corporation's bankruptcy, the bank advanced money to it by a series of loans which were periodically paid off and renewed. When the corporation was adjudicated, the bank was left with an unpaid claim of $17,414.79.

The Endicotts take the position that the "Subordination Agreement" which they signed [2] was no more than an offer and that, inasmuch as it was not executed by the bank, it never eventuated in a legally binding contract.

■ Express or formal acceptance by the bank was not called for by the offer nor was such express acceptance needed to complete the contract. See Williston, Contracts, Sections 78A and 90A; National Labor Relations Board v. Local 825, 3 Cir., 315 F.2d 695, 699. The bank's loans to the corporation constituted acceptance of the Endicotts' offer of subordination. In fact, inasmuch as the bank's only promise was to "consider" extending credit, it was giving them more than the contract called for.

■ The Referee found that the bank, in extending credit to the corporation, relied in part on the belief that the claims of the Endicotts were subordinated to its claims. This finding is in nowise impaired by the fact that the officer of the bank who last handled the Endicott account was unable to find the agreement until just before the bankruptcy and, in consequence, requested the Endicotts on several occasions to execute a new agreement. There was evidence that the officials of the bank were aware of the fact that such agreement had been executed and lodged with the bank. Nor is the bank's acceptance affected by the fact that at the date of the agreement it had already made two loans aggregating $10,-000.00 to the Endicotts. These loans could have been called at an early date, but instead they were either renewed or new credits granted over a period of fourteen years.

The order of the Referee will be affirmed.

---

1. John F., R. Paul, and their father, Ralph ℮.

2. The Referee found that the two sons were unaware that what they had signed was a subordination agreement, it having been presented to them for signature by their father who managed the busi-ness. However, they do not dispute their signatures, and the Referee found, upon the principle that one who signs a legal document is presumed to know its effect, that the bankrupt, the bank, and the three Endicotts intended the instrument to be a valid and binding agreement.