In the Matter of CREDIT INDUSTRIAL CORPORATION, Bankrupt.

Milton S. GOULD, I. Alan Harris and Henry Landau, Trustees-Petitioners-Appellants,

Jeanne LEVIN, Executrix of the Estate of Leo B. Levin, Deceased, Rose Friedman, Edith Keller, Beverly Keller, Pauline Goldstein, Fannie Winnick, Samuel Coslow, Benjamin Fried, Marcus Fried, Milton Schwartz, Arthur Hilton, Gertrude L. Hilton and Edward H. Bottner, Claimants-Respondents-Appellees.

No. 380, Docket 30299.

United States Court of Appeals Second Circuit.

Argued May 31, 1966.

Decided Aug. 30, 1966.

---

Israel Akselrod, New York City (Zalkin & Cohen, Henry Lewis Goodman, Harold N. Schwinger, New York City, of counsel), for trustees-appellants-cross-appellees.

Jules H. Enrich, New York City (Hays, Sklar & Herzberg, New York City), for claimant-appellee-cross-appellant, Jeanne Levin, Exx. of the Estate of Leo B. Levin.

David S. Kumble, New York City, for claimants-appellees-cross-appellants, Rose Friedman, Edith Keller, Beverly Keller, Pauline Goldstein and Fannie Winnick.

Maurice Knapp, New York City, for claimants-appellees-cross-appellants, Benjamin Fried, Marcus Fried, Milton Schwartz, Arthur Hilton, Gertrude L. Hilton and Edward H. Bottner.

LeBoeuf, Lamb & Leiby, New York City, as amicus curiae in support of appellants, Adrian C. Leiby, Alfred E. Froh, F. Bosley Crowther 3rd, New York City, of counsel.

Sullivan & Cromwell, New York City, for New York Clearing House, amicus curiae, William C. Pierce, New York City, of counsel.

Before MOORE,–SMITH and KAUFMAN, Circuit Judges.

MOORE, Circuit Judge.

In May, 1963, Credit Industrial Corporation (CIC) consented to an involuntary petition in bankruptcy. CIC was a commercial finance company located in New York City which financed its operations primarily by loans from individual and institutional lenders. The institutional creditors, consisting of some 29 banks and a financial corporation, filed claims which were allowed in the amount of $9,830,381.21. In addition to borrowing from the institutional lenders, CIC had borrowed from certain individuals on promissory notes which bore a high rate (10%–12%) of interest and which subordinated payment of such notes until CIC's obligations to the institutional creditors were satisfied. These individual creditors filed claims which were allowed in the amount of $926,265.09.

The trustees in bankruptcy of CIC, appellants and cross-appellees Milton S. Gould, Alan Harris and Henry Landau ("the trustees"), applied for an order subordinating the claims of the holders of the subordinated notes to the claims of the institutional creditors. Resisting the trustees' petition for an adjudication (amongst other things) that the claims of the individual noteholders were subordinate to the institutional creditors, seventeen individual creditors (hereinafter referred to as the noteholders) filed six answers to the trustees' application which collectively alleged various defenses and counterclaims demanding affirmative relief. The defenses asserted, so far as relevant to this appeal, in substance were (a) that the institutional creditors had not advanced funds to CIC in reliance on the subordination agreements; (b) that the institutional creditors had waived their rights to enforce the agreements by knowingly permitting CIC to pay the noteholders' claims on demand, and (c) that the agreements were invalid for the reason that CIC had fraudulently induced the noteholders to accept them. In addition, noteholder Leo B. Levin, since deceased and who is rep-

resented as an appellee and cross-appellant here by Jeanne Levin, executrix of his estate (Levin), contended that the subordination agreements were invalid on the grounds that CIC had issued and sold subordinated notes in violation of federal securities laws, and that the terms of the agreements were vague, ambiguous and failed to state specifically that they were applicable to bankruptcy proceedings.

The trustees moved to dismiss the defenses as legally insufficient and noteholder Levin cross-moved for summary judgment. The Referee dismissed all the defenses and counterclaims asserted except the defense of non–reliance, holding that the institutional creditors would have to prove reliance on the subordination agreements before the claims of the noteholders could be subordinated. He also denied Levin's motion for summary judgment. The trustees and Levin separately filed petitions to review the order of the Referee in the district court pursuant to Section 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c). The district court upheld the Referee's determination that a showing of reliance is a prerequisite to the enforcement of an express subordination agreement in bankruptcy proceedings. The district court also affirmed the Referee's dismissal of the defenses based on fraud, on violations of the federal securities laws and on waiver on the ground that they were superfluous and thus did not pass on their legal sufficiency. The district court rejected the ambiguity defense as frivolous finding that the provisions of the subordination agreements were not vague and were broad enough to encompass bankruptcy proceedings.

*The Scope of the Appeal*

The trustees appeal from so much of the district court's order as holds that non-reliance is a defense to the enforcement of the subordination agreements. Levin appeals from the affirmance of the Referee's denial of his motion for summary judgment whereby he sought to have his claim placed on a parity with all other creditors, from the striking of var-ious defenses in his answer as legally insufficient and from placing the burden on him of pleading as a defense non-reliance by the institutional creditors.

*Motion to Dismiss Appeals of Certain Noteholders*

Preliminarily, the right of certain noteholders to appeal must be determined. Noteholders Rose Friedman, Edith Keller, Beverly Keller, Pauline Goldstein, and Fannie Winnick (the Friedman group), and Benjamin Fried, Marcus Fried, Milton Schwartz, Arthur Hilton, Gertrude L. Hilton and Edward H. Bottner (the Fried group) filed timely notices of appeal in this court. The trustees, however, filed a motion in this court to dismiss the appeals of the Friedman and Fried groups on the ground that they had failed to petition the district court for review of the Referee's order pursuant to the requirements set forth in Section 39(c) of the Bankruptcy Act, 11 U.S. C. § 67(c), which provides in relevant part that "[a] person aggrieved by an order of a referee may, within ten days after the entry thereof * * *, file with the referee a petition for review of such order by a judge * * *. Unless the person aggrieved shall petition for review of such order within such ten-day period * * * the order of the referee shall become final." In an order dated March 2, 1966 this court postponed hearing the trustees' motion and consolidated the appeals of the two groups of noteholders and the trustees' motion with the trustees' and Levin's appeals.

In support of the motion to dismiss, the trustees argue that since, under the terms of Section 39(c), the Referee's order has become final as to the Friedman and Fried groups, they cannot be considered aggrieved parties, and thus neither the district court nor this court can entertain their appeals. The noteholders, on the other hand, contend that the trustees' petition filed in the district court preserved the rights of all creditors to seek review on the theory that, if such were not the case, the trustees would be guilty of favoring one group of creditors (the institutional creditors) to the detri-

ment of others. The determinative question is whether the purpose underlying the finality provision in Section 39(c) would be defeated by permitting the Friedman and Fried groups to participate in this appeal.

The finality provision in Section 39(c), which was added to the Bankruptcy Act in 1960, was designed to remove the uncertainty as to the finality of orders issued by bankruptcy referees which had resulted from bankruptcy courts exercising their discretion to permit untimely petitions for review of such orders, i. e., those filed more than ten days after entry of the orders. See S.Rep. No. 1689, 86th Cong., 2d Sess. (1960), U.S.Code Cong. & Admin.News 1960, p. 3194. But here there is no possibility that participation in this appeal by the Friedman and Fried groups would create uncertainty in the finality of the Referee's order or delay these bankruptcy proceedings since that order is properly before this court as a result of Levin's timely petition for review filed in the district court. Compare MacNeil v. Gargill, 231 F.2d 33 (1st Cir. 1956). To prevent the Friedman and Fried groups from using to their advantage determinations of this court which might be favorable to Levin would be clearly inequitable and contrary to the well-established policy of like treatment for like creditors. Moreover, both the Friedman and Fried groups filed briefs in the district court which opposed the trustees' attack on the Referee's decision concerning reliance and supported Levin's challenge to the Referee's dismissal of other defenses to enforcement of the subordination agreement which they had raised in common with him.[1] Consequently, we deny the trustees' motion to dismiss and hold that the Friedman and Fried groups can participate in this appeal as to all questions presented for consideration to the district court by Levin's timely petition for review. Their participation must be so restricted since, if they were permitted to challenge portions of the Referee's order that were not before the district court for review, finality of the Referee's order would be placed in jeopardy and the purpose behind the 1960 amendment of Section 39(c) would be frustrated.

*Lack of Reliance by the Institutional Creditors on the Subordination Agreements*

In bankruptcy, the parties claiming rights to participate in the assets of the bankrupt must do so in accordance with such contractual rights against the debtor as they may have purchased or acquired. Bankruptcy does not provide a forum for the realignment of rights or priorities but serves only as a forum for the recognition of rights already acquired. Thus the common stockholder, the first and second preferred, the debenture, note and mortage holders in various degrees, must be accorded those rights and priorities set forth in the securities which they hold. Attention, therefore, must be focused on the contract upon the basis of which the noteholders loaned various amounts to CIC. If the terms of the contracts are clear and unambiguous, as they are here, it is unnecessary to resort to strained theories of third-party beneficiary, estoppel or general principles of equity to evaluate and determine the proper respective positions of the parties involved.

Looking at the promissory notes which are all substantially alike, we find that the lender knew that until CIC should satisfy "every one of its present or future loans, * * * now in existence or hereafter incurred from any bank, finance company, * * * or any other institutional organization hereinafter referred to collectively as 'institutional creditors,'" CIC would not pay the notes in whole or in part. So long as

---

1. The record indicates that the Fried and Friedman groups raised the defenses of common law fraud and waiver, as did Levin. Neither group, however, argued that the debt instruments they held were sold in violation of the federal securities laws and that the subordination provisions in the instruments were too vague to be enforced.

there was no default in the payment of CIC's obligation to the institutional creditors, interest could be paid on the notes. Any payments on the notes prior to the satisfaction of the indebtedness to the institutional creditors were to be held by the noteholders in trust for the institutional creditors. The noteholders also knew that there was to be no contractual relationship between them and the institutional creditors because "all notice of the acceptance of this subordination provision by any institutional creditor" or "of the reliance by any such institutional creditor upon the subordination herein contained" was specifically waived. In short, just as the inducement of a higher interest return impels investors to take secondary security positions, so here the 10–12% return was the consideration for the noteholders' agreement to purchase an obligation subordinated to the banks which did not enjoy such an interest rate.

The terms of the noteholders' contracts being so explicit as to subordination, how then did the Referee and the district court reach the conclusion that they had, in effect, the right to redraw the contract, disavow the subordination clause and direct that the noteholders participate on a parity with those to whom they had agreed to be subordinated? The district court felt that "[b]lind adherence to the enforcement of subordination agreements in bankruptcy, based on strict third-party beneficiary contract law, is contrary to the equitable considerations and principles which permeate the rule of distribution of dividends among creditors similarly situated. * * *" The court concluded that " 'only where * * * creditors rely on a subordination agreement should a court of equity employ the principle of estoppel to subordinate.' " We do not agree and find this position to be unsound. It is, of course, true that "the theme of the Bankruptcy Act is equality of distribution." Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1940); see Kothe v. R. C. Taylor Trust, 280 U.S. 224, 227, 50 S.Ct. 142, 74 L.Ed. 382 (1930).

These same equitable considerations, however, require that the concept of equal distribution be applied only to creditors of equal rank, i. e., creditors who are similarly situated. Creditors who expressly agree to subordinate their claims against a debtor and the creditors for whose benefit the agreement to subordinate is executed are not similarly situated.

Subordination "agreements are almost uniformly enforced by bankruptcy courts * * *." 3 Collier, Bankruptcy ¶ 65.06 at 2295; see Elias v. Clarke, 143 F.2d 640 (2d Cir.), cert. denied, 323 U.S. 778, 65 S.Ct. 191, 89 L. Ed. 622 (1944); In re Aktiebolaget Kreuger & Toll, 96 F.2d 768 (2d Cir. 1938); cf. Prudence Realization Corp. v. Geist, 316 U.S. 89, 97, 62 S.Ct. 978, 86 L. Ed. 1293 (1942); Calligar, Subordination Agreements, 70 Yale L.J. 376–404 (1961). The enforcement of lawful subordination agreements by bankruptcy courts does not offend the policy of equal distribution of the bankrupt's estate. Section 65a of the Bankruptcy Act which provides that "[d]ividends of an equal per centum shall be declared and paid * * *," 11 U.S.C. § 105(a), "means no more than that dividends paid to creditors shall be pro rata except where there is a priority given by law or by lawful contractual arrangement between the parties." In re Aktiebolaget Kreuger & Toll, supra 96 F.2d at 770. See also Elias v. Clarke, supra; Bird & Sons Sales Corp. v. Tobin, 78 F.2d 371, 100 A.L.R. 654 (8th Cir. 1935). Moreover, the enforcement of such agreements is not based on any theory of equitable estoppel. In our opinion, the district court erroneously relied on the doctrine of equitable estoppel as a basis for its position and failed to recognize the distinction between equitable and consensual subordination in bankruptcy. Equitable subordination, which is founded upon estoppel, is the doctrine invoked by courts to deny equal treatment to creditors based on some inequitable or unconscionable conduct in which they have engaged, or a

special position which they occupy vis-a-vis the bankrupt that justifies subordination of their claims. 3 Collier, supra §§ 57.14, 65.06; see Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). On the other hand, consensual or contractual subordination, of which the debt subordination agreements involved here are prime examples, occurs when a credtior and the bankrupt agree to create priorities among debts. Such agreements have been uniformly enforced according to their terms by bankruptcy courts. Calligar, supra at 388–392. See generally Everett, Subordinated Debt: Nature and Enforcement, 20 Bus.Law. 953 (1965). The doctrine of equitable estoppel is clearly irrelevant to a determination of whether a lawful subordination agreement is enforceable in bankruptcy proceedings and the district court erred in invoking it to support its determination that enforcement of such agreements is conditioned on proof of reliance.[2]

Reliance may become a relevant factor where equitable considerations require its consideration, namely, where the subordination agreement itself is invalid. See In re Joe Newcomer Fin. Co., 226

F.Supp. 387, 390–392 (D.Colo.1964); In re Nat'l Discount Corp., 212 F.Supp. 929 (W.D.S.C.1963).[3] When a junior creditor establishes that the subordination agreement is unlawful, it may be reasonable and necessary, if equity is to be done, to require a senior creditor to prove that he relied on the subordination agreement, without actual or constructive knowledge of any infirmity in the agreement, in advancing funds to the bankrupt as a condition to receiving priority in the distribution of the bankrupt's estate. In cases where the underlying subordination agreement is unlawful, a court is not confronted with the problem of enforcing express contractual provisions but, rather, with the entirely separate problem of determining which general creditors should bear a loss caused by the debtor, a problem which may have to be resolved by reference to equitable principles.

Finally, we reject the district court's position because, although the court attempted to achieve an equitable result, the rule it enunciated actually is inequitable with respect to senior creditors. Clearly, the noteholders here neither bargained for, nor anticipated, that their express promise to subordinate

2. The district court sought support for its position in an article of which the bankruptcy referee involved here, Asa A. Herzog, was a co-author, Herzog & Zweibel, The Equitable Subordination of Claims in Bankruptcy, 15 Vand.L.Rev. 82 (1961), wherein the opinion is expressed that the concept of "estoppel to subordinate" should be utilized only where a creditor relies on a subordination agreement. Id. at 92. The sole authority cited by the authors in support of their position is Bird & Sons Sales Corp. v. Tobin, 78 F.2d 371 (8th Cir. 1935) which, in their words, "pointed in that direction * * *." 15 Vand.L.Rev. supra at 92 n. 69. It is true that the Eighth Circuit in affirming the district court's enforcement of a subordination agreement stated that it had been relied on by the creditors receiving priority. It is clear, however, that the question of whether proof of reliance is essential to the enforcement of a subordination agreement in bankruptcy was not before the court. The court's reference to reliance was not significantly related to its holding that a

bankruptcy court has the power to enforce lawful agreements to subordinate as written and, that the district court, by its adjustment of the order of payment, "conformed the distribution of the estate to accord with the rights of the parties, as such rights were fixed by their own contract." 78 F.2d at 373.

3. Other cases cited by the district court are inapposite. The sole issue raised in In re Endicott Co., 238 F.Supp. 163 (E.D.Pa.1964), aff'd without opinion, 341 F.2d 295 (3d Cir. 1965), was whether a senior creditor had properly accepted an offer to enter into a three-party subordination agreement with the bankrupt corporation and its owners as individuals. In re Temple of Music, Inc., 114 F.Supp. 759 (E.D.N.Y.1953), aff'd without opinion, 220 F.2d 249 (2d Cir. 1955) was concerned with the construction of a time limitation contained in a subordination agreement and whether the agreement was intended to apply to insolvency occurring after the date specified in the agreement.

their claims against CIC to those of existing and future institutional creditors would be conditioned upon proof of reliance on that promise by the institutional creditors. In fact, the express terms of their agreements are to the contrary, e. g., they agreed to waive reliance. To permit the noteholders at this late date to engraft a condition of reliance onto their subordination agreements would result in granting them a windfall which has no justification in reason, equity or logic. Cf. Calligar, supra at 391 n. 38. A bankruptcy court, in order to effectuate its duty to do equity, must enforce lawful subordination agreements according to their terms and prevent junior creditors from receiving funds where they have "explicitly agreed not to accept them." Henson, Subordination and Bankruptcy; Some Current Problems, 21 Bus.Laws, 763, 764 (1966). Moreover, it is not without significance that subordinated debt such as that involved here is widely employed today in financing commercial enterprises. See generally Everett, supra; Golin, Debt Subordination as a Working Tool, 7 N.Y.L.F. 370 (1961).[4] To deprive lending institutions of the right to enforce lawful subordination agreements and require them to prove in each instance that they relied on such agreements in advancing funds to businesses would not only place in jeopardy literally billions of dollars of outstanding loans,[5] but in all probability would prompt lending institutions to reconsider, and possibly curtail, their subordinated debt-financing activities to the detriment of the entire business community.

■ To conclude, we hold that a senior creditor can enforce in bankruptcy a subordination agreement which was executed for his benefit without alleging or proving that he advanced funds in reliance thereon provided that the agreement does not interfere with the statutory priorities set up by the Bankruptcy Act, see In re Aktiebolaget Kreuger & Toll, supra 96 F.2d at 770, and the agreement is otherwise lawful. The district court's determination that non-reliance is a defense to the enforcement of such an agreement by a bankruptcy court is reversed.

■ As to the district court's affirmance of the Referee's determination that the noteholders were required to plead non-reliance on the part of the institutional creditors, CIC's obligations to the institutional creditors being superior to its obligations to the subordinated noteholders, it is unnecessary for the institutional creditors to plead or prove knowledge of, or reliance upon, the subordination commitments made by the noteholders in their respective notes.

*Other Defenses*

■ The district court, in dismissing the defenses based on common law fraud, violations of the federal securities laws and waiver as "beside the point," noted that these defenses would not be available against one who had relied in good faith on the subordination agreements in advancing funds to CIC. Since the court concluded that the institutional creditors could enforce the agreements only if they proved that they had relied on them, it reasoned that these defenses, whether valid or not, would be of no assistance to the noteholders. Since, however, as we hold, lawful subordination agreements are enforceable in bankruptcy proceedings irrespective of whether the senior creditors advanced funds in reliance on them, these affirmative defenses may become important to the rights of junior

---

4. It appears from the Investment Dealer's Digest, referred to in a brief filed as *amicus curiae* by the law firm of LeBoeuf, Lamb & Leiby, that over $5 billion worth of subordinated debt securities were issued during the period from 1961 to 1965 by industrial and finance corporations (excluding railroads and banks).

5. In a brief filed as *amicus curiae* by the New York Clearing House Association, it was stated that eight of its members presently have outstanding loans in the approximate amount of $3,200,000,000 to which other debt of the borrowers involved purports to be subordinated.

creditors and the noteholders here are entitled to assert them.[6]

*Inconsistent Position*

The Fried and Friedman groups and Levin all claimed that CIC fraudulently induced them to advance funds by misrepresenting material facts relating to its financial affairs and by promising to pay off their loans on demand irrespective of the agreements to subordinate. The trustees contend on appeal, however, that the noteholders are not entitled to assert such a defense on the theory that, by filing claims in the bankruptcy proceedings based on their debt instruments, they irrevocably elected to enforce the instruments as written. This result does not follow. Pursuant to General Bankruptcy Order 37, see 11 U.S.C. Section 53, the Federal Rules of Civil Procedure apply to bankruptcy proceedings "insofar as they are not inconsistent with the Act, or with these general orders. 2 Moore, Federal Practice ¶ 8.17[4] (2d ed. 1965). The concept of an irrevocable election relied on by the trustees is contrary to the spirit of the Federal Rules which are designed to avoid basing decisions on the merits on pleading technicalities, see Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed. 2d 222 (1962), and in particular it is inconsistent with the mandate of Rule 8 which authorizes a party to "state as many separate * * * defenses as he has regardless of consistency * * *." In our opinion, the filing of the claims is not an assertion by the noteholders of the validity of the notes.

*Waiver*

The cross-appellants also argued below that the institutional creditors waived their rights to enforce the subordination agreements on the ground that they had knowledge of, and acquiesced in, CIC's practice of paying the loans of subordinated creditors on demand. The trustees assert that the cross-appellants failed to specify which institutional creditors failed to object to CIC's payment practice.

Waiver is a question of fact. If the banks by their acts or failures to act led the noteholders to believe that the banks were relinquishing their superior position, the noteholders should have an opportunity to offer such proof on this subject as may be available to them. Discovery procedures and a hearing on remand provide adequate means by which the noteholders can obtain the relevant facts.

*Alleged Securities Act Violations*

Cross-appellant Levin also sought below to rescind the debt instrument which he held on the ground that it was a security within the meaning of Section 2(1) of the Securities Act of 1933 (the 1933 Act), 15 U.S.C. § 77b(1), and had been sold by CIC in violation of various sections of the federal securities laws. In particular, he alleged violations of Sections 12(2) and 17(a) of the 1933 Act, 15 U.S.C. §§ 77l(2) & 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78j(b), and Rule X-10B-5 promulgated thereunder by the SEC, asserting that CIC had misrepresented and omitted material facts and used deceptive devices in selling the debt instrument to him. On appeal, he urges that these claims are legally sufficient, not barred by Section 13 of the 1933 Act, 15 U.S.C. § 77m, which provides in part that actions based on alleged violations of Section 12(2) must be brought within three years after the sale of the security and, therefore, that the district court erred in dismissing his defense based on these claims.[7]

---

6. The rights claimed by the institutional creditors under the subordination agreements as third-party beneficiaries are derivative rights which are dependent on the validity of the agreement which gave rise to them. See 4 Corbin, Contracts, § 818 at 266–267 (1951).

7. Levin also alleged in his defense that CIC failed to file a registration statement with the SEC with respect to the debt instrument he purchased which, assuming that the instrument was not exempt from the registration requirements, would constitute a violation of Section 12(1) of the

■ Whether there be any statutory violation and, if there be, its effect, if any, on the rights and priorities of the institutional creditors will be dependent upon the development of such facts as are relevant to these issues. They cannot and should not be determined on a motion to strike defenses. The rights of all parties are adequately protected at this time by allowing this defense to remain without prejudice to an appropriate resolution thereof upon the law and facts as developed.

*Alleged Vagueness*

■ The district court dismissed as frivolous Levin's claim that the subordination provisions contained in his debt instrument were unenforceable because they were too vague and, in addition, because they failed to provide expressly that they applied to bankruptcy proceedings. We affirm that determination. The subordination provisions are clearly and precisely worded, and represent an unambiguous agreement. For example, it is expressly provided that the holder waives any notice of the creation or extension of CIC's obligations to institutional creditors, and waives reliance by the institutional creditors on the subordination provisions. Moreover, the subordination provisions are all encompassing and preclude payment to the holder whenever there is an unsatisfied outstanding senior debt. Any reference to bankruptcy proceedings would have been superfluous in view of the broad terms of the subordination provisions. Cf. In re Aktiebolaget Kreuger & Toll, supra, 96 F.2d at 770.

In sum, we conclude that (1) the Friedman and Fried groups are entitled to participate in the appeal to the extent covered by the Levin petition for review, and accordingly deny the trustees' motion to dismiss their appeals; (2) the district court correctly held that the language of the noteholders' notes concerning subordination was not ambiguous and applied to bankruptcy proceedings; (3) reliance upon the subordination agreements in the individual noteholders' notes need be neither pleaded nor proved by the institutional creditors, both prior and subsequent to the respective dates of the individual noteholders' promissory notes, and non-reliance by them on such agreements is not a defense to their claims (in view of this holding, amendment of any answer to plead such a defense should not have been allowed); and (4) the defenses of alleged waiver, fraud and securities law violation should not have been stricken but should await such disposition as the law and facts require after the relevant facts have been developed.

The judgment of the district court is affirmed in part, reversed in part and the case is remanded to the Referee for further proceedings in accordance with this opinion.

---

1933 Act, 15 U.S.C. § 77*l*(1). According to Section 13, actions based on violations of Section 12(1) must be "brought within one year after the violation upon which (they are) * * * based." 15 U.S.C. § 77m. The timeliness of a claim under Section 12(1) turns on the same question as the timeliness of Levin's claim based on Section 12(2), namely, whether CIC's issuance of the renewal note on November 1, 1962 constituted a sale of a security within the meaning of Section 2(3).