### In the Matter of KINGSBORO MORTGAGE CORPORATION, Bankrupt.
### No. 69/B/20.

United States District Court,
S. D. New York.
July 31, 1974.

Casey, Lane & Mittendorf, New York City (William E. Kelly, James M. Shaughnessy, and John T. Morin, New York City, of counsel), for appellant.

Weisman, Celler, Spett, Modlin & Wertheimer, New York City (Samuel R. Rudey, New York City, of counsel), for trustee-appellee.

Simpson Thacher & Bartlett, New York City (Henry Landau, New York City, of counsel), for appellee Manufacturers-Hanover Trust Co.

### OPINION

CANNELLA, District Judge:

This appeal from a decision of Hon. Edward J. Ryan, Bankruptcy Judge, dated March 13, 1974 (summarized at CCH Bankr.L.Rep. ¶ 65,215) and an order subsequently entered thereon (March 25, 1974), raises the question of whether, pursuant to a valid contractual subordination agreement among creditors, certain senior unsecured creditors may recover "post-petition" interest on their indebtedness prior to and from any dividend allocable to those junior creditors

which are party to the subordination agreement. The bankruptcy court answered this question in the affirmative. This Court does not agree and, in light of the recent decision of the Third Circuit in, In re Time Sales Finance Corp., 491 F.2d 841 (3 Cir. 1974), the decision below is reversed.[1]

The factual framework giving rise to the present appeal is not subject to dispute among the parties and is presented by Judge Ryan in such fashion as not to require further elaboration here.[2] Rather, the legal issue raised may be said to turn upon the effect to be given certain language contained in the subordination agreement, the pertinent portions of which serve as point of departure for the present inquiry.

12. Subordination to Senior Debt.

. . .

(b) In the event of any insolvency, liquidation, reorganization or other similar proceedings, or any receivership proceedings in connection therewith, relative to the Company or its creditors or its property, and in the event of any proceedings for volun-

---

1. The Third Circuit rendered its decision in the *Time Sales* case on February 7 of this year, and that decision was first reported in the CCH Bankruptcy Law Reporter on March 8 (¶ 65,129). As is indicated above, Judge Ryan determined the instant matter on March 13, 1974, slightly over a month later and just five days after the decision was reported. Given the state of the record below, it is more than likely that the Bankruptcy Judge did not become aware of the *Time Sales* decision until after the order appealed from had been entered.

2. In the interests of clarity and in order that subsequent readers might better understand the facts giving rise to the present controversy, the Court recites, in pertinent part, the statement of facts contained in Judge Ryan's opinion at 4–6 (such statement being in fact one submitted by appellant to the bankruptcy court).

The bankrupt herein, Kingsboro Mortgage Corporation ("Kingsboro") was in the business of real estate mortgage financing and management of real estate holdings. On January 13, 1969, Kingsboro filed a petition under Chapter XI of the Bankruptcy Act and was adjudicated a bankrupt on February 26, 1973.

[Appellant] filed a claim in the amount of $1,881,075 for the unpaid balance of principal and interest, to the date of bankruptcy, due on two 5¾% Subordinated Notes issued by Kingsboro. . . . The Subordinated Notes were issued pursuant to an agreement . . . dated April 17, 1964, between Kingsboro and [Appellant].

On June 2, 1970, the trustee in bankruptcy, Howard F. Sunshine, moved for an order subordinating [Appellant's] claim, as well as the claims of Northwestern Life Insurance Company and The Paul Revere Life Insurance Company (Claims Nos. 3 and 6, respectively), both of which are based on Junior Subordinated Notes, to the claims of Manufacturers-Hanover Trust Company, Northwestern National Life Insurance Company and Farm Bureau Life Insurance Company, (Claims Nos. 5, 44 and 43, respectively) (the 'Senior Creditors'). The Senior Creditors are claiming approximately $6,450,000 in principal and interest through the date of bankruptcy, and are also claiming interest from the date of the filing of the petition in bankruptcy through the date of actual payment ('post-petition interest').

Although the trustee's motion originally requested subordination of [Appellant's] claim to not only the amount of the Senior Creditors claims to principal and interest through the date of Bankruptcy but also to their claim to post-petition interest, that motion was amended, pursuant to [Appellant's] request, to exclude post-petition interest. Thus, on July 20, 1970, the Referee in Bankruptcy, Honorable Edward J. Ryan, ordered [Appellant's] claim, as well as the claims of the Junior Subordinate Noteholders, subordinated to the Senior Creditors' claims to unpaid principal and interest to the date of bankruptcy. Referee Ryan's order also provided that it was without prejudice to the right of the trustee to apply at a later time for an order subordinating [Appellant's] claim to the Senior Creditors' Claims to post-petition interest. . . .

Since July 20, 1970, the trustee has been managing and disposing of the bankrupt estate and has practically paid off the full amount of the Senior Creditors' claims, exclusive of post-petition interest. Since the issue is now presented as to whether [Appellant's] claim or the Senior Creditors' claim to post-petition interest should be paid next, [Appellant] makes this motion for an order disallowing the Senior Creditors' claims to post-petition interest or subordinating them to [Appellant's] claim to principal and interest through the date of bankruptcy, January 13, 1969.

tary liquidation, dissolution or other winding up of the Company whether or not involving insolvency or *bankruptcy proceedings, then all principal and interest on all Senior Debt shall first be paid in full,* or such payment shall have provided for, *before any payment on account of principal or interest is made upon the Notes* [junior debt]. . . .

(d) In any of the proceedings referred to in paragraph (b) above, any payment or distribution of any kind or character, whether in cash, property, stock or obligations which may be payable or deliverable in respect of the Notes shall be paid or delivered directly to the holders of Senior Debt for application in payment thereof, *unless and until all principal and interest on all Senior Debt shall have been paid in full.* . . . [Emphasis added] [3]

Judge Ryan, in his determination of the matter, indicated that the aforestated terms of the subordination agreement "clearly [demonstrate that appellant] had in mind precisely the situation now before the Court," and it agreed that "all principal and interest on all Senior Debt shall first be paid *in full* . . . before any payment on account of principal and interest is made upon

the Notes. . . ."[4] Upon such reasoning, the Judge concluded that "[n]o sound reason has been advanced by the [appellant] why this language should not be given its obvious construction and effect."[5]

In adopting this view, that an allowance of "post-petition" interest to appellee creditors was justified by the contract, the bankruptcy court rejected appellant's contention that Section 63(a) (1) of the Bankruptcy Act, 11 U.S.C. § 103(a)(1),[6] which restricts proofs of claim founded upon fixed liability to the principal amount of the obligation and any interest thereon which would have been recoverable at the time of the filing of the petition in bankruptcy, as well as those well recognized policy considerations which hold for the cessation of interest accrual as of the date of filing the petition,[7] served to preclude the allowance of interest sought by the appellees.[8] Rather, the Judge found the rule stated by the Court of Appeals for this Circuit in In re Credit Industrial Corp., 366 F.Supp. 402 (2 Cir. 1966), namely, that the "bankruptcy court, in order to effectuate its duty to do equity, must enforce lawful subordination agreements according to their terms and prevent junior creditors from receiving funds where they have 'explicitly agreed not to

---

3. Judge Ryan's opinion at 6.

4. *Id.* at 9.

5. *Id.*

6. Section 63(a)(1) of the Bankruptcy Act, 11 U.S.C. § 103(a)(1) provides, in relevant part:

    (a) Debts of the bankrupt may be proved and allowed against his estate which are founded upon (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition by or against him, whether then payable or not, with any interest thereon which would have been recoverable at that date. . . .

7. *See, e.g.,* Nicholas v. United States, 384 U. S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1947); Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244

(1911); Columbia Aircraft Co. v. United States, 163 F.Supp. 932 (S.D.N.Y.1958); 3A Collier, Bankruptcy ¶ 63.16[1] at 1855 et seq. (14 ed. 1972).

8. The courts have recognized certain exceptions to the general rule that interest does not accrue after the petition in bankruptcy is filed and have allowed "post-petition" interest where (1) the alleged bankrupt proves solvent; (2) the security held by the creditor as collateral produces income after the filing of the petition; and (3) the security is sufficient to pay interest as well as the principal of the claim. United States v. Bass, 271 F.2d 129, 130 (9 Cir. 1959). *See also,* Columbia Aircraft Co. v. United States, *supra;* In re Lykens Hosiery Mills, 141 F. Supp. 895, 897 (S.D.N.Y.1956); 3A Collier, *supra,* at 1860 *et seq.* However, none of the above-stated exceptions are here applicable.

accept them' ",[9] dispositive of this controversy.

For purposes of the instant appeal, this Court has no quarrel with this analysis of the applicable law.[10] Departure from Judge Ryan's view is necessitated only because the conclusion reached, that by the subordination agreement appellant "clearly demonstrat[ed]" an intent to allow senior unsecured creditors "post-petition" interest prior to and out of any dividend allocable to it, misconceives the thrust of the relevant decisional authority.

Squarely in point is the recent decision of the Court of Appeals for the Third Circuit in In re Time Sales Finance Corp., *supra*. In that case, the Court of Appeals affirmed the district court's denial of "post-petition" interest to senior creditors predicated upon a subordination agreement almost identical to that at bar.

> In the event of any liquidation, dissolution or winding up of the company or of any receivership, insolvency, bankruptcy, liquidation, readjustment, reorganization or other similar proceedings relative to the company or its creditors or its property, *all principal and interest owing on all superior indebtedness of the company shall be paid in full before any payment is made on Five Year Debenture Notes.* . . . [Emphasis the Court's][11]

Judge Adams, speaking for a unanimous court, stated the rationale for the *Time Sales* decision in these words:

We need not decide, at this time, whether the narrow group of exceptions to the general rule that "everything stops" at the date the petition is filed is to be expanded to include the situation here. . . .

Instead, the district court's conclusion that the subordination provision contained in the debenture notes did not appropriately apprise the debenture note holders that their claims against the bankrupt would be subordinated to [the senior creditor's] demand for post-petition interest is not incorrect and, thus, is adequate to sustain its order denying [the senior creditor's] claim for post-petition interest. . . . *If a creditor desires to establish a right to post-petition interest and a concomitant reduction in the dividends due to subordinated creditors, the agreement should clearly show that the general rule that interest stops on the date of the filing of the petition is to be suspended, at least vis-a-vis these parties.* [Emphasis added][12]

Rather than being in conflict with the decision of the Second Circuit in In re Credit Industrial Corp., *supra*, as appellees contend, *Time Sales* is in complete accord with the rationale of that earlier case. As was stated, *supra, Credit Industrial* clearly stands for the proposition that lawful subordination agreements must be enforced in bankruptcy according to their terms and that junior creditors may not receive funds which they have "explicitly agreed not to ac-

---

9. *See also,* discussion at 366 F.2d 407–10 (and the authorities cited therein) ; Bird & Sons Sales Corp. v. Tobin, 78 F.2d 371, 373 (8 Cir. 1935) ; 3A Collier, *supra,* ¶ 65.06 at 2294–95; 6 Remington, Bankruptcy Law § 2874 at 484 et seq. (5 ed., Henderson 1952 and Supp.1973, Hayes).

10. In this regard, this Court is in accord with the view expressed by the Court of Appeals for the Third Circuit in the *Time Sales* case, 491 F.2d at 845, namely :

[w]hen we are confronted with an instrument that satisfactorily indicates that subordinated creditors were put on notice

that superior creditors may be entitled to interest up to the date of actual distribution . . . we may then be called upon to determine whether the language of section 63(a)(1) and the policies underpinning the Bankruptcy Act permit the payment of post-petition interest from the bankrupt's estate where some of the creditors have agreed to subordinate their claims against the bankrupt to those of other creditors.

11. 491 F.2d at 842.

12. *Id.* at 844.

cept." *Time Sales* does not deviate from this view nor does it exact a more stringent requirement in instances such as at bar. The rule established by *Time Sales,* that before a right to "post-petition" interest and a concomitant reduction in dividends to subordinated creditors may be recognized, "the agreement should clearly show that the general rule that interest stops on the date of the filing of the petition is to be suspended, at least vis-a-vis these parties," [13] is no more than a rule of "explicitness" wholly consistent with that enunciated in the *Credit Industrial* case.

On the record before it, this Court can not view the provisions contained in the subordination agreement, which are to the effect that no payment shall be made to the subordinated creditors "unless and until all principal and interest on all Senior Debt shall have been paid in full," when taken in a context of specific reference to "bankruptcy proceedings", as sufficiently clear and explicit as would preclude the operation of the general and accepted rule that "everything stops" on such date as the petition in bankruptcy is filed.[14] Upon the standard established in *Time Sales,* precise, explicit and unambiguous language must be contained in the subordination agreement to the effect that the contract abrogates the general rule regarding interest, in order that a right to "post-petition" interest prior to the payment of dividends to junior creditors may be established. Accordingly, the Court concludes that Judge Ryan erred in ruling that the contract at bar "clearly demonstrates" an intent to allow payment of "post-petition" interest.

The decision and order of the bankruptcy court is reversed and the entry of an appropriate order is directed.

So ordered.

13. *Id.*

14. The Court finds that the language contained in the involved subordination agreement is not of such nature as would pre-

clude an interpretation of "interest" as employed therein so as to mean such interest as is usually allowable in bankruptcy proceedings, that the general rule regarding interest would not be applied.