**In re LEASING CONSULTANTS, INC., Bankrupt.**

**Bankruptcy No. 70–B–656.**

United States Bankruptcy Court, E. D. New York, at Westbury.

Jan. 10, 1980.

Hahn, Hessen, Margolis & Ryan, New York City, for trustee by George A. Hahn, Jeffrey L. Schwartz, New York City, of counsel.

Sonnenfeld, Busner & Weinstein, New York City, for Scientific Resources Corp. by Fred Sonnenfeld, New York City.

Zalkin, Rodin & Goodman, New York City, for Citibank N. A. by Willian Linden, New York City, of counsel.

ROBERT JOHN HALL, Bankruptcy Judge.

The trustee has moved this Court for an order declaring that certain claims constitute senior indebtedness under subordination agreements dated November 14, 1968 ("November Agreement") and May 28, 1969 ("May Agreement"). Claimant Scientific Resources Corporation ("SRC") filed an answer alleging that its claim constitutes senior indebtedness under the November Agreement.

For the reasons set forth in this decision, this Court holds that SRC's claim constitutes senior indebtedness as defined in the November Agreement.

### I.

Leasing Consultants, Inc. ("LCI") filed a petition for an arrangement under Chapter XI of the Bankruptcy Act on August 18, 1970. Subsequently, on October 14, 1970 LCI was adjudicated a bankrupt. LCI was in the business of leasing aircraft, industrial and computer equipment.

Prior to the filing of the Chapter XI petition, LCI issued two series of subordinated notes ("Notes") pursuant to the November Agreement and the May Agreement. The notes and the agreements contained provisions subordinating the payment of the principal and interest of the notes to and in favor of the payment of senior indebtedness or senior debt as therein defined ("Senior Indebtedness").

The paragraph defining Senior Indebtedness in the November Agreement provides in pertinent part that:

"5.7 The term "senior indebtedness" shall mean (a) all indebtedness for money borrowed or incurred *in connection with* the acquisition of businesses, properties or other assets at any time incurred, created, assumed, or guaranteed by the Company . . . the terms "indebtedness for money borrowed" is used in foregoing sentence shall mean any obligation of the Company (and any guarantee, enforcement or other contingent obligation of the Company in respect of, of to purchase, otherwise acquired, any obligation of another) for borrowed money".

While the November Agreement defines the term "indebtedness for money borrowed", it does not define the term "indebtedness . . . incurred in connection with the acquisition of businesses, properties or other assets at any time incurred, created, assumed, or guaranteed by the Company".

## II.

In determining whether or not SRC's claim constitutes senior indebtedness, the Court must examine the nature of SRC's claim.

LCI was in the business of leasing equipment to corporations. Due to the favorable tax treatment then accorded such an arrangement, LCI often entered into "sale on lease back" contracts with its customers, pursuant to which LCI would "purchase" and then immediately "lease back" to its customer's own machinery and equipment.

SRC's claim arises from such an arrangement. In its "Proof of Claim and Application to Direct Liquidation of Claim" sworn to by Michael H. Applebaum, a vice president of SRC, it was stated that:

"On or about February 6, 1970, SRC and LCI entered into a written contract, a true and correct copy of which is attached hereto and made a part hereof as Exhibit A. Under the terms of the contract, LCI was obligated to purchase from SRC certain equipment for the sum of $5,000,000 and to lease said equipment back to SRC for a period of six years.

The SRC claim, originally filed in the sum of $1,300,000 and later amended to $650,000, was finally reduced to $90,000 by Order of this Court dated September 16, 1976. $50,000 of the claim was characterized by SRC in its September 17, 1970 proof of claim as follows:

In conjunction with the execution of the written contract SRC paid to LCI the sum of $50,000.00 as a "commitment fee". Under the terms of the contract LCI was obligated to return the $50,000 "commitment fee". Under the terms of the contract LCI was obligated to return the $50,000 "commitment fee" to SRC in the event the LCI did not consummate the transaction as required by the contract.

. . .

b) LCI has not consummated the transaction as required by the contract. On February 13, 1970 and on numerous occasions thereafter representatives of SRC communicated, orally and in writing, with representatives of LCI requesting that the transaction be consummated. LCI has at all times refused to consummate the transaction.

c) On March 19, 1970, SRC sent to LCI written notice demanding that LCI either consummate the transaction or return to SRC the $50,000 paid to LCI as a "commitment fee". A true and correct copy of this notice is attached hereto and made a part hereof as Exhibit B. LCI has since at all times refused to consummate the transaction and has refused to return the $50,000 payment.

The remainder of the claim to wit: $1,250,000 later reduced to $600,000, was characterized in SRC's original proof of claim as "damages" sustained by SRC resulting from Leasing's breach of contract, both actual and punitive. In the amended proof of claim, where SRC reduced this portion of the claim to $600,000, this portion of the claim was characterized as a loss sustained, after mitigation, of Leasing's breach of contract. As stated, this portion of the SRC claim was still further reduced to $40,000 by the Order of September 16, 1976.

The issue before this Court is whether or not SRC's claim was indebtedness incurred *in connection with* the acquisition of assets.

## III.

It has been uniformly held that:

"In bankruptcy, the parties claiming rights to participate in the assets of the bankrupt must do so in accordance with such contractual rights against the debtor as they may have purchased or acquired." *In re Credit Industrial Corp.*, 366 F.2d 402, 407 (2d Cir. 1966). See also *SEC v. White & Co.*, 546 F.2d 789, 792 (8th Cir. 1976); *In the Matter of Weis Securities, Inc.*, 1 CBC2d 84, 87–88 (S.D.N.Y.1979) (Babitt, B. J.).

■ The enforcement of lawful subordination agreements by Bankruptcy Courts does not offend the policy of equal distribution of the bankrupt's estate. *In re Credit Industrial Corp.*, supra, at 408.[1]

■ The parties agree that, as a specie of contract, a subordination agreement is interpreted in accordance with the ordinary meaning of the language contained therein. *Brainard v. New York Central*, 242 N.Y. 125, 131, 151 N.E. 152 (1926).

SRC's position, to put it simply, is that since its claim arose from a transaction in which LCI was to have acquired assets, i. e., the machinery and equipment, it was "in connection with" the acquisition of assets and therefore qualifies as senior indebtedness under the November Agreement.

In opposing SRC's position, the trustee argues that given such interpretation, almost every debt owed by LCI could arguably be entitled to benefit under the subordination agreement. The trustee also contends that because the sale and lease back transaction was never consummated, and

LCI never actually acquired any assets, SRC's claim does not qualify as senior indebtedness. In addition, Citibank in opposing SRC's application, argues that SRC's claim did not qualify as senior indebtedness because it does not involve the lending of money or any financing whatsoever.

■ The Court agrees with SRC's position that its claim qualifies as senior indebtedness. To qualify as senior indebtedness under the November Agreement, the indebtedness may be for borrowed money *or* it may be for any indebtedness incurred *in connection with* the acquisition of property or other assets at any time incurred by LCI.

SRC's damages were incurred in a transaction in which LCI was to acquire assets, i. e., machinery and then lease it back to SRC.

Although the transaction was never consummated, the damages arising from the sale and lease back transaction clearly was indebtedness incurred *"in connection with"* the acquisition of assets. The November Agreement does not require that to qualify as senior indebtedness, LCI must have actually acquired assets; the language is clear, indebtedness need only have been incurred *"in connection with"* the acquisition of assets.

As to the argument that no financing was involved in the aforesaid transaction, it is true that a claim *may* qualify as senior indebtedness if it is "for money borrowed", i. e., claimant has loaned LCI money or has entered into a financing agreement with LCI. However, the November Agreement also provides that *all* indebtedness for money borrowed *or* incurred in connection with the acquisition of assets, etc. qualifies as senior indebtedness.

■ The trustee's argument that SRC's interpretation would allow almost ev-

1. The holding of these cases recognizing the enforceability of subordination agreements in bankruptcy cases has been codified in section 510(a) of the Bankruptcy Reform Act of 1978.
Section 510(a) provides that:
A subordination agreement is enforceable in a case under this Title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.

This sub-section requires the Court to enforce subordination agreements. See House Report 95–595, 95th Cong., 1st Sess. 359 (1977); See Senate Report 95–989, 95th Cong., 2nd Sess. 74 (1978). While the Bankruptcy Reform Act became effective on October 1, 1979, by virtue of Section 403(a), it does not apply to this proceeding.

ery debt owed by LCI to be entitled to benefit under the subordination agreement is irrelevant. A subordination agreement is a contract. When, as in this case, the contract is unambiguous, the parties rights are governed exclusively by the contract. While it may be unusual, a subordination agreement under which the junior creditor is subordinated to *all* other creditors is not improper, and is enforceable.

The broad definition of senior indebtedness contained in the November Agreement only underscores the need for careful drafting of a subordination agreement. The terms used in such agreements should be defined with the utmost precision. It has been stated that:

> The importance of making certain that the senior debt qualifies as such within the limitations provided in the subordination agreement, indenture, or other instrument creating or evidencing the subordinated debt *cannot be overemphasized. Calligar, Subordination Agreements,* 70 Yale L.J. 376–404, 392 (1961) (emphasis supplied).

While the language of the November Agreement may be broad, it is unambiguous. All indebtedness incurred in connection with the acquisition of assets qualifies as senior indebtedness.[2]

### IV.

The Court finds that as a matter of law the contract is unambiguous, and therefore the evidence of intention and acts of the parties plays no part in the decision of this case. Assuming arguendo that the language of the contract was ambiguous, the extrinsic evidence in this case supports SRC's position.

The only relevant extrinsic evidence submitted was a copy of the May Agreement. The May Agreement defined senior indebtedness as follows:

> 12. Subordination to Senior Debt. Anything herein or in the Notes to the contrary notwithstanding the indebtedness

evidenced by the Notes shall be subordinate and junior to the extent set forth in the following paragraphs (a) to (c), inclusive, to all indebtedness of the Company *for borrowed money*, provided that such indebtedness shall have been created or incurred prior to the maturity of the Notes by lapse of time, acceleration or otherwise. Such indebtedness of the Company to which the Notes are subordinate or junior is sometimes referred to as "Senior Debt." (emphasis supplied).

The May Agreement provides senior indebtedness status only for claims arising for borrowed money. Clearly, SRC's claim is not for borrowed money, and hence it would not qualify as senior indebtedness under the May Agreement. However, the November Agreement's definition of senior indebtedness is much broader than the definition contained in the May Agreement. If LCI intended to confer senior indebtedness status only on creditors whose indebtedness was for borrowed money, it should have stated so in its November Agreement, as it did in its May Agreement.

■ Should the Court construe the November Agreement as limiting senior indebtedness status to indebtedness incurred for money borrowed, it would render the rest of the paragraph a nullity. It is axiomatic that a contract will not be construed so as to reject any words as surplusage if they reasonably can be given meaning. *Union Inv. Co. v. Fidelity and Deposit Co. of Md.,* 549 F.2d 1107, 1110 (6th Cir. 1977); See also *Thanet Corp. v. United States,* 591 F.2d 629, 633 (Ct.Cl.1979); *California Pacific Bank v. Small Business Admin.,* 557 F.2d 218, 223 (9th Cir. 1977). 3 A. Corbin, Contracts § 549 (2d ed. 1960).

Creditors qualify as senior indebtedness under paragraph 5.7 of the November Agreement when their indebtedness is either 1) "for money borrowed" or 2) incurred in connection with the acquisition of assets, properties or businesses. SRC's claim falls within the latter category and thereby qualifies as senior indebtedness.

Settle Order.

---

2. The fact that the assets were not actually acquired is irrelevant, as is the fact that once

acquired the assets were to be leased back to the purchaser.