**In re N–REN CORPORATION, Debtor.**

**BANC AMERICA COMMERCIAL
CORP., Objector,**

v.

**NORTHERN ILLINOIS GAS
COMPANY, Respondent.**

**Bankruptcy No. 1–86–00144.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Nov. 25, 1987.

Terri A. Mazur, Chicago Ill., for respondent.

Thomas E. Biron, Philadelphia, Pa., for objector.

Timothy J. Hurley, Cincinnati, Ohio, for debtor.

Paul Nemann, Cincinnati, Ohio, for Creditors' Committee.

### DECISION ON OBJECTION TO ORDER OF SALE

BURTON PERLMAN, Bankruptcy Judge.

Debtor herein, pursuant to 11 U.S.C. § 363(b), moved for an order approving an option and purchase agreement between debtor and Plant Process Equipment, Inc. ("PPE") relating to debtor's bulk liquid carbon dioxide processing facility located near Joplin, Missouri ("Joplin plant"). An order authorizing the sale was entered July 31, 1986 (Doc. No. 375). That order included a provision that the proceeds of the sale, less such deductions as may be agreed to by relevant parties, was to be paid to Northern Illinois Gas Company ("Ni–Gas"). The order further provided for notice to creditors, and that the order would become final "in the absence of the filing and service of a colorable objection within twenty (20) days of the mailing of the notice hereof by the Clerk of the Bankruptcy Court." An affidavit of service (Doc. No. 383) was filed August 5, 1986 reciting that mailing of the July 31, 1986 order occurred August 4, 1986. On September 26, 1986, BancAmerica Commercial Corporation ("BACC"), objector herein, filed an objection to the July 31, 1986 order, but only to the extent that

distribution of the net proceeds to Ni-Gas was provided. This written objection states that it complements the objection made by BACC at a hearing on September 11, 1986. Thereafter, on September 26, 1986, we entered an order approving the sale of the Joplin plant, but modified the previous conditional order by requiring the proceeds to be placed in trust, instead of being delivered to Ni-Gas.

The BACC objection lay dormant due to the occurrence of other events in the case which took priority until, on July 1, 1987, Ni-Gas filed a motion for summary judgment on the BACC objection, together with a supporting memorandum. BACC filed a memorandum in opposition, which also bore in its title an indication that a cross-motion for judgment was intended (though not filed). Ni-Gas has filed a reply memorandum. There has been no request for oral argument.

The record on these cross-motions consists primarily of a Stipulation of Facts. Ni-Gas, in addition, has filed an affidavit of Clark V. Kennedy, president of PPE. BACC has filed nothing in addition to the Stipulation.

We find the following facts which are, for the most part, set forth in the Stipulation. The Atlas Powder Company operated an ammonia production facility on land it owned in Jasper County, Missouri. Raw carbon dioxide was a by-product of the ammonia production. N-Ren Corporation, debtor herein, acquired a leasehold interest on a parcel of land within the Atlas Plant site and adjacent to the ammonia production facility, upon which N-Ren constructed the Joplin plant in order to process Atlas's raw carbon dioxide by-product into usable purified liquid carbon dioxide. The Atlas/N-Ren lease agreement was entered into November 1, 1979. Thereafter, on October 28, 1982, BACC obtained a security interest in N-Ren's assets, including the Joplin plant. No question is raised herein about the perfection of BACC's security interest and we therefore omit reference to the facts about recording by BACC.

On May 4, 1983, N-Ren and Ni-Gas entered into a security agreement which gave Ni-Gas a security interest in "all spare parts and other goods used or usable in the manufacture of chemical products" at the Joplin plant. On that same date, May 4, 1983, N-Ren, Ni-Gas and BACC entered into an Intercreditor Agreement, which provided that notwithstanding the general priority of BACC's security interest, the security interest granted to Ni-Gas in the collateral located at the Joplin plant shall be prior and superior to that granted to BACC.

On August 17, 1983, N-Ren executed and delivered to Ni-Gas a Deed of Trust/Security Agreement and Assignment of Rents, the subject matter of which was N-Ren's leasehold interest under its lease agreement with Atlas, just as had been the case with a similar document executed by N-Ren and delivered to BACC on October 29, 1982. On December 8, 1983, BACC and Ni-Gas entered into a subordination agreement which recited that the deeds of trust, both of BACC and Ni-Gas, "cover identical security", the Joplin plant. The agreement expressly provided that:

1. The Deed of Trust in favor of [BACC] "as described above" is hereby subordinated to and in favor of the Deed of Trust in favor of Ni-Gas "as described above".

2. In all respects, the Deed of Trust in favor of Ni-Gas shall be considered and construed as superior and prior to the Deed of Trust in favor of [BACC].

On January 15, 1986, N-Ren filed a petition for relief under Chapter 11 of the Bankruptcy Code. At that time, Ni-Gas, a provider of gas services to N-Ren, was a creditor of N-Ren, claiming that it was owed in excess of twenty million dollars. BACC is an agent for itself and three other banks that are creditors of N-Ren, and BACC and the banks it represents claim that they were owed on the date of the filing of the Chapter 11 petition, in excess of thirty-eight million dollars by N-Ren. The Joplin plant was sold on July 25, 1986 for $500,000.00 to PPE. On July 31, 1986, as was stated above, we entered a conditional order approving the sale of the Joplin plant with the proceeds to be "paid to

Ni–Gas simultaneously with the closing of the sale." The only objection filed within the 20–day objection period provided for in the July 31, 1986 order was that of CFC Investment Company ("CFC"), which was concerned with possible adverse tax consequences to CFC. Objections to the payment of the proceeds of the sale to Ni–Gas were made within the 20–day objection period. Ni–Gas and N–Ren resolved the dispute with CFC, and at a hearing to deal with that situation on September 11, 1986, counsel for BACC first informed a representative of Ni–Gas of BACC's intention to object to the payment to Ni–Gas of the sale proceeds. On September 25, 1986, counsel for N–Ren advised the court of the resolution with CFC and also that BACC intended to file an objection to distribution of the proceeds to Ni–Gas. Such an objection was filed by BACC on September 26, 1986.

Further facts will appear hereafter.

A threshold issue to be dealt with here is whether the BACC objection was timely filed since it was not filed within the 20 day objection period following the July 31, 1986 order. Additional issues raised on the Ni–Gas motion are (1) whether the present objection by BACC is barred by its subordination agreements with Ni–Gas; (2) whether the Ni–Gas security interest was perfected; and (3) whether the Ni–Gas security interest was valid as to BACC because BACC was aware of it. We turn first to the threshold question.

Ni–Gas mentions the ground of timeliness of objection merely in passing, and BACC does not address it at all in its memorandum. The issue cannot, however, be ignored. The issue calls into question the propriety of the employment by this court of conditional orders. Such orders may be briefly described by saying that they grant relief for which a motion has been filed, as to which statute or due process requires that creditors or other interested parties be given an opportunity to object or to be heard. The conditional order grants the relief sought, but provides for a fixed period for objection. By its terms, the order becomes final and unconditional upon the passage of the objection period in the absence of objection. If there is an objection, hearing thereon is held and a superseding final order is entered. As a practical matter, since in most instances there is no objection, the court is relieved of the additional steps which would be necessary if notice first were issued, followed by a subsequent unconditional order. The burden of which the court is thus relieved is not insubstantial.

While such conditional orders are beneficial to the court, a problem as to them arises in the specifics of the present case. Here, BACC filed no objection within the objection period. It is true that there was an objection during the objection period, but it was by CFC, a creditor other than BACC, stating an objection other than that urged by BACC. The objection of CFC was worked out and an order settling that objection was entered. That order was not inconsistent with the original conditional order.

■ Under these circumstances, we hold that the BACC objection was not timely filed and its right to object to distribution of the proceeds of sale of the Joplin plant to Ni–Gas was time-barred by its failure to object within the period provided in the July 31, 1986 conditional order.

We consider this conclusion sufficient to compel the overruling of the objection of BACC. We will, nevertheless, deal with another ground argued by the parties, the right of BACC to object to distribution to Ni–Gas in view of the subordination agreement between the parties. A first point to make is that 11 U.S.C. § 510 and applicable nonbankruptcy law leave no question that the subordination agreement between Ni–Gas and BACC is enforceable. See, *In re Kors, Inc.*, 64 B.R. 163, 169 (D.Ct. Vermont 1986), aff'd 819 F.2d 19 (2nd Cir.1987); *In re Leasing Consultants, Inc.*, 2 B.R. 165, 168 (Bankr.E.D.N.Y.1980).

Further, there is no question that the parties to the present dispute, Ni–Gas and BACC, both entered into security agreements with the debtor, nor that BACC's security interest was prior in time. There was, however, an express agreement between Ni–Gas and BACC in which BACC

agreed to subordinate its security interest to that of Ni–Gas. It is not necessary for us to elaborate on the foregoing summary statements, for BACC does not contest them. Instead, BACC says that the fact that it entered into a contract with Ni–Gas by which it expressly agreed to subordinate its security interest to that of Ni–Gas is irrelevant, for the reason that it appears here "as a pre-petition creditor, as well as a post-petition administrative claimant and secured creditor." BACC appears to be saying that the subordination agreement must be disregarded because it is objecting here not on its own behalf as a secured creditor, but rather on behalf of the bankruptcy estate. BACC does remark that it may ultimately receive all or a portion of the proceeds from the sale of the Joplin plant when they are distributed by the bankruptcy estate. This position is based upon an assumption that if distribution is not made to Ni–Gas, the proceeds will be distributed to the bankruptcy estate.

While BACC in its memorandum contends that argument about the effect of the subordination agreement between itself and Ni–Gas is irrelevant because it does not view this as a contest between secured creditors, the subordination agreement cannot be ignored. It determines BACC's rights as a secured creditor. We will explore the legal reasoning why this is so, for therein lies as well the answer to whether BACC's strategy of asserting that it here speaks not for itself as a secured creditor, but in some other capacity on behalf of the bankruptcy estate, can be allowed.

██ BACC may not, in the face of the subordination and intercreditor agreements that it entered into with Ni–Gas, argue that the proceeds of sale of the Joplin plant should not be paid to Ni–Gas, but should be paid to BACC as a secured creditor, regardless of the validity of the Ni– Gas security interest. We find a basis for this preclusion in estoppel. That is, we hold that BACC, secured creditor, is estopped by the said agreements to argue that Ni–Gas' security interest is invalid. We reach this holding on the basis that estoppel will not permit a party to take a later position in-

consistent with one he has taken earlier, where the party in whose favor the estoppel arises has relied upon the earlier position. See 12 *Williston on Contracts* § 1508 (1970); 31 C.J.S. Estoppel § 107 (1964); 28 Am.Jur.2d, Waivers and Estoppel § 33 (1966); *Aluminum Company of America v. Essex Group, Inc.*, 499 F.Supp. 53, 85 (D.C.W.D.Pa.1980) (finding estoppel where writing in question settled or treated as settled a fact); *Reynolds Metals Co. v. Skinner*, 166 F.2d 66, 73 (6th Cir.1948) (neither a licensee nor an assignee may dispute validity of a patent in suit for royalty under license referring to dissent in *MacGregor v. Westinghouse Electric and Mfg. Co.*, 329 U.S. 402, 409, 67 S.Ct. 421, 424, 91 L.Ed. 380 (1947), which clarifies that basis is estoppel.) We must examine the situation before us to see whether a present position of invalidity of the Ni–Gas security interest is inconsistent with an earlier position acquiesced in by BACC.

The evidence in the case at bar supports the conclusion that the parties here involved had in their contracts treated as settled the validity of Ni–Gas' security interest. Prior to the present controversy, BACC and Ni–Gas, the two adverse parties here, under date December 8, 1983, entered into a subordination agreement, executed by an authorized officer of BACC. That document contains, first, an express recitation that BACC is "Beneficiary of a Deed of Trust in which N–REN Corporation, a Delaware corporation is Grantor ..." It further provides that Ni–Gas is also "a Beneficiary of a Deed of Trust in which N–REN Corporation ... is Grantor." It recites as well that the parties have entered into an Intercreditor Agreement and that, in consideration of the Intercreditor Agreement, BACC subordinates its Deed of Trust in favor of Ni–Gas. The Subordination Agreement concludes with the undertaking by BACC that "In all respects, the Deed of Trust in favor of Ni–Gas shall be considered and construed as superior and prior to the Deed of Trust in favor of [BACC]." Referring then to the Intercreditor Agreement, it is fair to infer from its terms that its purpose was to secure a

continuation of the supply of natural gas to the debtor by Ni–Gas. To achieve that purpose, reference was made to the collateral held by BACC and by Ni–Gas in property of the debtor, and the agreement provided that:

> To the extent that the mortgages and/or security interests granted to Secured Party [BACC] and Ni–Gas by Debtor are in the assets, the mortgages and/or security interest granted to Secured Party shall be prior and superior to those granted to Ni–Gas. Notwithstanding the preceding, the parties hereby agree that any Mortgage and/or security interest granted to Ni–Gas in the collateral located at Debtor's Joplin, Missouri facility, commonly known as the Joplin $CO2$ Project, shall be prior and superior to that granted to Secured Party.

In entering into these agreements, the parties at least regarded as settled any question about the validity of their respective security interests. To permit BACC now to take the position that the Ni–Gas security interest is invalid cannot be countenanced. That would be to say that the parties had entered into a pointless exercise when Ni–Gas obtained its secured position and the undertaking of BACC, a prior secured party, to subordinate its interest, as consideration for its furnishing gas to the debtor. At the time, BACC was vitally interested in assuring a continued supply of gas to the debtor, for such a supply was necessary to the continued operation of debtor, and continued operation was key to any hope of BACC to recoup its debt. For BACC now to assert that the making of the subordination agreement was pointless is an inherently unfair position, and we hold that it is estopped from doing so.

Thus, we reach the conclusion that BACC, secured creditor, is estopped to contest the validity of the Ni–Gas security interest. We stated before embarking on the exercise leading to that conclusion, that its basis was of moment in dealing with BACC's position that it argues here not on its own behalf as a secured creditor, but on behalf of the estate. BACC says that it acts here on behalf of the estate and may do this in its capacity as a pre-petition creditor, as well as a post-petition administrative claimant and secured creditor.

We must, however, consider the actuality of why BACC has gone to the expense of asserting the position which it does here. The footnote at the beginning of its memorandum suggests the reason. BACC is secured by all of the assets of the debtor and anything that comes into the bankruptcy estate will be subject to its security interest and will be distributed to BACC. BACC is not here on behalf of the bankruptcy estate or of all unsecured creditors. It is here in pursuit of its own objective, in this case its objective being to secure a distribution of the proceeds of sale of the Joplin plant to itself rather than to Ni–Gas. We cannot permit BACC with so sophistic an argument to evade the contractual obligation which it entered into with Ni–Gas, and upon which Ni–Gas relied.

Because the foregoing is sufficient to dispose of the present objection, we do not reach the remaining questions discussed by the parties. The objection of BACC to distribution of the proceeds of sale of the Joplin plant to Ni–Gas will be overruled.