**In re HINDERLITER INDUSTRIES, INC., Debtors.**

**Bankruptcy No. 92–40933–S.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Jan. 25, 1999.

Gregory A. Lowry, Alex D. Madrazo, Locke Purnell Rain Harrell, P.C., Dallas, TX, for John James Jenkins, Chapter 7 Trustee.

Leonard H. Gerson, Angel & Frankel, P.C., New York City, for American Stock Transfer & Trust Co.

### *OPINION*

DONALD R. SHARP, Chief Judge.

NOW before the Court for consideration is the Objection of Chapter 7 Trustee To Proof of Claim of American Stock Transfer & Trust Co., (Claim No. 286) Based Upon Hinderliter Debentures, Bonds or Pay in Kind Notes, Memorandum of Law in Support and Response by American Stock Transfer & Trust Co., In Opposition To Chapter 7 Trustee's Objection to Proof of Claim. At the conclusion of the hearing, the matter was taken under advisement. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

## JURISDICTION

This Court has jurisdiction over the within proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## FACTUAL AND PROCEDURAL BACKGROUND

Hinderliter Industries, Inc., ("Hinderliter") filed a voluntary petition under Chapter 11, Title 11 of the United States Bankruptcy Code. The proceeding was converted to a case under Chapter 7 of the Code and John James Jenkins was appointed Chapter 7 Trustee (the "Trustee") for the Hinderliter bankruptcy estate. American Stock Transfer & Trust Co. ("AST"), filed an unsecured claim in the amount of $1,808,338.51 ("AST's Claim"). AST is the indenture trustee under an indenture dated February 6, 1986 (the "Indenture") between Hinderliter and AST for the issuance of 14.7% Convertible Subordinated Pay–In–Kind Notes ("Debentures"). The Trustee filed his Objection to the Proof of Claim Of American Stock Transfer & Trust Co. (Claim No. 286). At issue are the subordination provisions of the Indenture upon which AST's claim is based.

The Trustee objects to allowance of AST's Claim "to the extent that it seeks (i) allowance of a claim against Hinderliter with a priority other than subordinate to all other unsecured claims; and (ii) allowance of a claim entitled to distributions from this estate before payment in full of all other unsecured claims." Since the Trustee's Objection to AST's Claim does not attempt to disallow or dispose of AST's Claim in its entirety, partially, or to quantify a dollar amount, the allowed amount of the Proof of Claim is not the subject matter of this opinion. The Trustee's Objection seeks *(1) a determination pursuant to 11 U.S.C. § 510 that AST's Claim is subordinated in priority to other unsecured claims of the Hinderliter bankruptcy estate and (2) entry of an order directing the Trustee not to make any distribu-*tions *of property of the estate on account of AST's Claim until all allowed unsecured claims against the estate are paid in full.*

AST filed its Response In Opposition to the Chapter 7 Trustee's Objection To Proof of Claim requesting that the relief sought by the Trustee be denied. The Response alleges that (i) the Trustee ignores § 11.09 of the Indenture dealing with the effect of the Indenture's subordination provision with respect to Hinderliter's obligations, (ii) there is no basis for the enforcement of this subordination provision and (iii) the Trustee "extends the breadth of the Indenture's subordination provisions beyond its terms to all claims in the case". AST also asks that its claim be allowed so that it could distribute funds in accordance with the Indenture.[1]

## ISSUES

1. Whether the AST Claim is subordinated in priority to other allowed, unsecured creditors' claims against the estate?

2. Whether the Trustee may make any distributions of property of the estate on account of AST's Claim until all allowed unsecured claims against the estate are paid in full?

## DISCUSSION OF LAW

*Whether the AST Claim is subordinated to other allowed, unsecured creditors' claims against the estate?*

The effect of a pre-petition subordination agreement upon claims in a bankruptcy estate is governed by 11 U.S.C. § 510(a) which states: "A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable non-bankruptcy law." 11 U.S.C. § 510(a) codified the pre–1978 Bankruptcy Act holding of *In re Credit Industrial Corp.*, 366 F.2d 402 (2nd Cir.1966) to that effect: "A bankruptcy court, in order to

---

1. At trial, the Trustee announced that the parties agreed to let the Court rule based on its interpretation of the provisions in the Indenture and the records in the case and to forego oral argument. No evidence was proffered besides the copy of the Indenture appended as an exhibit to the Trustee's brief. Further, the Trustee announced that if there is to be a distribution, he agreed to make such distribution to AST rather than the "individuals" [Securityholders] under the terms of the Indenture.

effectuate its duty to do equity, must enforce lawful subordination agreements according to their terms and prevent junior creditors from receiving funds where they have 'explicitly agreed not to accept them'." and "Subordination agreements are almost uniformly enforced by the bankruptcy courts". *Id.* at 408, 410 *citing to Elias v. Clarke*, 143 F.2d 640 (2nd Cir.), cert. denied, 323 U.S. 778, 65 S.Ct. 191, 89 L.Ed. 622 (1944); *In re Aktiebolaget, Kreuger & Toll*, 96 F.2d 768 (2nd Cir.1938); cf. *Prudence Realization Corp. v. Geist*, 316 U.S. 89, 97, 62 S.Ct. 978, 86 L.Ed. 1293 (1942).

Soon after the adoption of the Bankruptcy Code in 1978, the Court restated its position on pre-petition subordination in *Beatrice Foods Co. v. Hart Ski Mfg. Co. (In re Hart Ski Mfg. Co.)*, 5 B.R. 734 (Bankr.D.Minn. 1980).[2] "The intent of § 510(a) (subordination) is to allow the consensual and contractual priority of payment to be maintained between creditors among themselves in a bankruptcy proceeding. There is no indication that Congress intended to allow creditors to alter, by a subordination agreement, the bankruptcy laws unrelated to distribution of assets." *Beatrice Foods Co. v. Hart Ski Mfg. Co. (In re Hart Ski Mfg. Co.)*, 5 B.R. 734 (Bankr.D.Minn.1980). Subsequent case law does not significantly diverge from the *Credit* and *Beatrice* Courts' holdings.[3] See *inter alia In re Best Products Co., Inc.*, 168 B.R. 35 (Bkrtcy.S.D.N.Y.1994), *In re Ionosphere Clubs, Inc.*, 134 B.R. 528 (Bkrtcy. S.D.N.Y.1991) and *In re Leasing Consultants Inc.*, 2 B.R. 165 (Bkrtcy.E.D.N.Y.1980).

■ Given the dictates of § 510(a), to determine whether the AST Claim is subordinated to other allowed, unsecured creditors' claims against the estate this Court must look to the four corners of the document and, where it is clear and specific, the words of the document will be given their plain, ordinary and usual meaning. *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 948 (5th Cir.) cert. denied, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981); *In re Leasing Consultants Inc.*, 2 B.R. 165 (Bkrtcy.E.D.N.Y. 1980). When interpreting a contract, courts shall read the contract as a whole and consider all parts as part of the whole and not give undue force to certain words or phrases that would distort or confuse the primary and dominant purpose of the contract. *Empire Properties Corp. v. Manufacturers Trust Co.*, 288 N.Y. 242, 248, 43 N.E.2d 25, 28 (1942). Finally, Courts should construe an indenture as a whole to carry out the plain purpose and object of the indenture and not limit itself to literal interpretations. *Id.*, 288 N.Y. at 248–49, 43 N.E.2d at 28. See also *In re Envirodyne Industries, Inc.* 161 B.R. 440, 445 (Bkrtcy.N.D.Ill.1993).

■ *In light of the foregoing, the question becomes: Does the Indenture clearly demonstrate an intent to subordinate claims of security holders to those of senior debt holders, including the general unsecured creditors of this estate? This Court finds that it does.*

The answer to this question, begins with Section 1.04(1) of the Indenture entitled "Rules of Construction", which states that "Unless the context otherwise requires: (1) a term has the meaning assigned to it ...", and, for such assigned meanings, the Court must look to the definitions of each class of claims as provided in the Indenture.

Section 1.01 "Definitions" assigns the following meaning to "Holder" and "Security-

---

**2.** AST cites to Beatrice for the proposition that it be allowed to collect on its claim and hold funds in trust to distribute to holders of senior debt. The issue in *Beatrice* was the right of the secured creditor to seek adequate protection given its subordinated claim.

**3.** This consistency may reflect the underlying securities nature of most of the debenture matters that come before the Courts. To sell publically corporate debt securities under the Securities Act of 1933, the securities must be registered. The purpose of registration and the incumbent disclosure is to protect against fraud upon investors.

The financial disclosures made as a result of registration may also be relied upon by other types of creditors. Accordingly, paragraph 4 of the reverse side of each Security issued under the Indenture sets forth that: "The terms of the securities include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939 (15 U.S.Code §§ 77aaa–77bbb) (the "Act").... The Securities are subject to all such terms, and Securityholders are referred to the Indenture and the Act for a statement of such terms."

holder": [the term] "means a person in whose name a Security is registered" and includes "indenture security holder" under Section 1.03 of the Indentures.[4] The Court finds that the Securityholders are the "individual" holders under the agreement to which the Trustee referred in his announcement to the Court at the hearing respecting distribution.

Section 1.02 refers the reader to Section 11.02 for a definition of Senior Debt. Section 11 of the Indenture is the section which deals with Subordination. Under Section 11.02. "Certain Definitions"—"Debt" means:

(1) any debt of the Company (i) for borrowed money, (ii) relating to accounts payable and accrued liabilities which arise in the ordinary course of business by reason of purchases of goods and services by the Company, or (iii) evidenced by a note, debenture similar instrument (including a purchase money obligation) given in connection with the acquisition of any property or assets, including securities;

(2) any debt of others described in the preceding clause (1) which the Company has guaranteed or for which it is otherwise liable; and

(3) any amendment, renewal, extension or refunding of any such debt . . .

"*Senior Debt*" means the principal of, premium, if any, and interest on Debt of the Company outstanding at any time other than debt of the company to a Subsidiary for money borrowed advanced from any Subsidiary and except Debt which by its terms is not senior and superior in right of payment to the Securities.

Thus it is clear that the only debt of the Company to be excluded from the definition of "Senior Debt" is debt to a subsidiary for money borrowed or advanced and debt which by its express terms is defined as not being senior debt. All other debt would fall into the classification of "Senior Debt" and the payment of the securities at issue in this proceeding are subordinated to the payment of those claims.

Section 11.01 sets forth the Agreement to Subordinate:

The Company agrees and each Securityholder by accepting a Security agrees that the indebtedness evidenced by the Securities, and payment of the principal and interest thereon, is subordinated in right of payment, to the extent and in the manner provided in this Article, to the prior payment in full of all Senior Debt and that the subordination is for the benefit of the holders of the Senior Debt. This Article shall constitute a continuing offer to all persons who, in reliance upon such provisions, become holders of, or continue to hold, Senior Debt, and such provisions are made for the benefit of the holders of Senior Debt, and such holders are made obligees hereunder and they and/or each of them may enforce such provisions.

While the Indenture fails to otherwise define "obligee", it is juxtaposed to "obligor", which under Article I, Section 1.03 is defined as "on the indenture securities means the Company [Hinderliter]."

The foregoing subordination language is reiterated and made specifically applicable to this bankruptcy in Section 11.03 entitled "Liquidation; Dissolution; Bankruptcy": (1) holders of Senior Debt shall be entitled to receive payment in full in cash . . . before Securityholders or the Trustee (i.e. AST, the Indenture Trustee) on behalf of the Securityholders . . . [and] "(2) until the Senior Debt is paid in full in cash, any distribution to which the Securityholders would be entitled but for this article shall be made to holders of the Senior Debt [ . . . ]."

There is no evidence upon which this Court can find other than that "Senior Debt" under Section 11.02 correspond to the debts of general unsecured creditors of the Hinderliter estate not entitled to priority under 11 U.S.C. §§ 506 and 507. This Court disagrees with AST's contention that the Trustee extends the breadth of the Indenture's subordination provision. The Trustee's Objection and Memorandum indicate that he does not foreclose the possibility that there

---

**4.** "Securities" means the Securities described above [Hinderliter's 14.7% Convertible Subordinated Pay–In–Kind Notes Due January 15, 1999] issued under this Indenture including Secondary Securities issued . . . . Indenture at Page 2, section 1.02.

may be claims among the general, unsecured claims against the estate, to which AST's claim should not be subordinated. Equity and fairness require that AST be granted the privilege of bringing an action to demonstrate that any specific claim falls into one of the two categories of debt that would not constitute "Senior Debt" of the Company. That is, a debt owed to a subsidiary or a debt which by its terms is defined as not Senior Debt. To the extent that there may be unsecured claims that do not constitute "Senior Debt" for the purpose of the Indenture AST may file objections to the Trustee's payment of such claims and they will only be allowed after appropriate notice and a hearing. The Trustee's posture in this regard does not work to the detriment of AST, rather, it nullifies AST's contention that he extends the breadth of the subordination provision beyond its terms.

■ *The Purpose of the Indenture.* Courts should construe an indenture as a whole to carry out the plain purpose and object of the indenture. The very purpose of subordination clauses is to allow holders of senior indebtedness to recover if the debtor cannot meet its obligations. *In re Envirodyne Industries, Inc.,* 161 B.R. 440, 448 (Bkrtcy.N.D.Ill.1993). The Indenture, as a contract, reflects the "bargain" among the parties. The intent of the drafter of the subordination provisions of the Indenture appears in the clause that announces that the subordination is for the *benefit* [emphasis added] of the holders of the Senior Debt. [See Indenture at Section 11.01 above.] Such purposeful language serves to illustrate that the effect of the agreement to subordinate has been contemplated to some extent and is voluntary. In addition, the Indenture makes special provisions for Senior Debt holders in numerous instances throughout the document. For example, § 11.04 forbids payment of principal or of interest on the Securities if an event of default on Senior Debt occurs and is continuing [. . .]. In such an event, "[t]he Company may resume payments on the Securities and may acquire them when:(a)the default is cured or waived [. . .]". Also, § 11.05, Acceleration of Securities, provides that "[i]f payment of the Securities is accelerated because of an Event of

Default, the Company shall promptly notify holders of Senior Debt of the acceleration." Other provisions are made in the Indenture which lead a reasonable person to believe that the drafters of the Indenture prepared it, if not to benefit, at least to protect the interests of Senior Debt holders *vis a vis* Securityholders. The Indenture's reliance provision which reads: "This Article shall constitute a continuing offer to all persons who, in reliance upon such provisions, become holders of, or continue to hold, Senior Debt, and such provisions are made for the benefit of the holders of Senior Debt ..." demonstrate that not only did the drafters intend to protect the Senior Debt holders, they may also have been aware of the element of reliance that was the subject of the *Credit Industrial Corp.,* Court's holding. *In re Credit Industrial Corp.,* 366 F.2d 402 (2nd Cir.1966). Section 11.08 entitled "Subrogation" provides that After all Senior Debt is paid in full and until the Securities are paid in full, Securityholders shall be subrogated to the rights of holders of Senior Debt to receive distributions applicable to Senior Debt to the extent that distributions otherwise payable to the Securityholders have been applied to the payment of Senior Debt. Section 11.06 underscores the relationship between Securityholders and Senior Debt holders elevating it to a fiduciary level; it requires Securityholders who receive a distribution that should not have been made to them to hold it in trust for holders of Senior Debt and pay it over to them. Given a recurring pattern of provisions to protect and benefit the Senior Debt holders *vis a vis* the Securityholders, for this Court to fail to enforce the terms of the subordination clause would be contrary to the apparent intent of the drafters otherwise to protect and "benefit" the holders of Senior Debt.

Paragraph 5 of AST's Response avers that the Claim Objection ignores § 11.09 of the Indenture "dealing with the effect of the Indenture's subordination provision with respect to Hinderliter's Obligations". The Response fails to elucidate such allegation. The Trustee's Objection to the Claim in no way attempts to diminish or to undermine the obligation of Hinderliter to AST, it merely

seeks this Court's determination of how to prioritize such obligation. In support of its allegation, AST points to the language in § 11.09 respecting the "relative rights" of the Securityholders and holders of Senior Debt: "Nothing in this Indenture shall: ... (2) affect the relative rights of Securityholders and creditors of the Company other than holders of Senior Debt; ...". It is not clear why AST finds that this language supports its position rather than the Trustee's given that the issue is the prioritization scheme to be employed among the general unsecured creditors of the estate, specifically, AST vis a vis the general unsecured creditors of the estate, rather than the relationship between Hinderliter, the Debtor, and "the holders of the Debentures", (i.e. AST, as Trustee, or the individual Securityholders). Indeed, § 11.09(3) clearly states that the remedies available to the [Indenture] Trustee (AST) or any Securityholder are "subject to the rights of holders of Senior Debt to receive distributions otherwise payable to Securityholders." [See Indenture at § 11.09(3) ].

■ Regardless of the language of the Indenture and the prophylactic provisions for Senior Debt holders contained therein, AST asserts that there is no basis for the enforcement of the subordination provision by Hinderliter against AST. AST recognizes that the Courts diverge from strict enforcement of legally sufficient subordination agreements only in the event of provisions that are unclear or ambiguous.[5] The best examples of such instances are *In Re Kingsboro Mortgage Corp.*, 514 F.2d 400 (2d Cir.1975), *In Matter of Time Sales Finance Corp.*, 491 F.2d 841 (3d Cir.1974), *In re Ionosphere Clubs, Inc.*, 134 B.R. 528 (Bkrtcy.S.D.N.Y. 1991) and *Matter of King Resources Co.*, 528 F.2d 789, 791 (10th Cir.1976) to which AST specifically refers in its Response at Paragraph 10. In all of the aforementioned cases, the indenture did not specifically mention post petition interest which was the subject of the parties' respective disputes. Insofar as the language of the instant Indenture is not unclear or ambiguous, and in fact deliberately treats subordination in the event of

bankruptcy, the aforementioned cases are distinguishable from the instant case, which may be compared to *In re Best Products Co., Inc.*, 168 B.R. 35, 70 (Bkrtcy.S.D.N.Y.1994). In *In re Best Products Co., Inc., Id.*, the Court found that "Objectants" to the proposed Plan of Reorganization which enforced the terms of the subordination agreement in dispute had failed to adduce evidence that would lead the Court to the conclusion that the unambiguous agreements should not be enforced according to their terms. The *Best* Court cited the *Credit Industrial* Court and offered a policy argument favoring enforcement of pre-petition subordination agreements: "To deprive lending institutions of the right to enforce lawful subordination agreements and require them to prove [reliance] ... would not only place in jeopardy literally billions of dollars of outstanding loans, but in all probability would prompt lending institutions to reconsider and possibly curtail their subordinated debt financing activities to the detriment of the entire business community". *In re Credit Industrial Corp.*, 366 F.2d 402, 410 (2nd Cir.1966).

The matter before this Court is exactly the scenario contemplated by the *Credit Industrial* Court when it was said that junior creditors should be prevented from receiving funds where they have "explicitly agreed not to accept them". *Id.* at 410. AST's allegation that the language of the Indenture is ambiguous is not supported by evidence or argument. This Court believes, based upon the language and purpose of the Indenture, the language and purpose of the appropriate provisions of the Code and in keeping with the policies and precedential reasoning of the case law cited herein, that this subordination agreement should be enforced by this Court. The language, intent and purpose of the subordination provision would be defeated if AST's reading of those provisions were to be adopted.

In light of this Court's interpretation of the Indenture, its subordination provisions, the waiver of argument by counsel, the agreement announced in Court respecting distribution and the other records in this

---

5. When the contract is unambiguous, the parties' rights are governed exclusively by the contract.

*In re Leasing Consultants*, 2 B.R. 165, 169 (Bkrtcy.E.D.N.Y.1980).

case, until the Trustee demonstrates otherwise, there is no evidence before this Court upon which to base an order disbursing any amount or making any distribution of property of this estate to AST prior to payment in full of all allowed unsecured claims against the estate. Moreover, to disburse to AST prior to payment in full of all allowed unsecured claims against the estate would be contrary to common sense, the prioritization scheme in a Chapter 7 asset case as promulgated in the Bankruptcy Code, Rule 1 of the Federal Rules of Civil Procedure and to the purposes of the Indenture agreement. A premature disbursement could require eventual disgorgement, further litigation and could cause additional costs and expenses to accrue against the estate to the detriment of all creditors.

### CONCLUSION

For the foregoing reasons, the Trustee's Objections To Claim No. 286 of American Stock Transfer & Title Co. should be sustained to the extent that it subordinates AST's claim to those of the general, unsecured creditors of this bankruptcy estate. Nothing contained herein shall be construed to limit or reduce the amount or allowability of the claim, as filed, at this time.

### ORDER

The Court has before it for consideration the Objection of the Chapter 7 Trustee to the Proof of Claim of American Stock Transfer & Trust Company (Claim No. 286) Based Upon Hinderliter Debentures. The Court has considered the pleadings filed herein, the stipulations, agreements and arguments of counsel and for reasons contained in a written opinion dated contemporaneously herewith, it is ORDERED that the payment of the claim of American Stock Transfer & Trust Company (Claim No. 286) is hereby subordinated to the payment of the general unsecured claims filed herein in accordance with the provisions of the opinion.